UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**FENF, LLC,**

      **Plaintiff,**

v.

**TAYLOR GIFTS, INC.,**

      **Defendant.**

_____/

Case No. 10-14351

Honorable Denise Page Hood

## ORDER AND OPINION REGARDING CLAIM CONSTRUCTION
### and
## ORDER REGARDING DEFENDANT'S SUMMARY JUDGMENT MOTION

**I.    BACKGROUND**

On October 29, 2010, Plaintiff FenF, LLC filed a Complaint against Defendant Taylor Gifts, Inc. A Second Amended Complaint was filed on August 12, 2011, alleging the following Claims: Federal Patent Infringement (First Claim); Federal Trademark Infringement; Unfair Competition, 15 U.S.C. § 1125(a), § 43(a) of the Lanham Act (Second Claim); Federal Trademark Counterfeiting, 15 U.S.C. § 114, § 32 of the Lanham Act (Third Claim); and, Michigan Trademark and Unfair Competition, M.C.L. § 429.42, 445.903, *et seq.* (Fourth Claim).

FenF through its related entities, promotes, markets and sells a variety of products designed to enhance one's life. (Sec. Am. Comp., ¶ 8) At issue in this lawsuit is a patented orthopedic device to stretch and exercise the toes and feet under FenF's federally registered trademarks Yoga Toes and YogaToes. (Sec. Am. Comp., ¶ 9) Frederic Ferri, the inventor, applied for patent involving a device and method for stretching the toes. U.S. Patent No. 7,131,939 ("'939 Patent") was filed on October 17, 2003 and U.S. Patent No. 7,322,915 ("'915 Patent"), a later-filed divisional, was filed

on September 28, 2006 (collectively, the "Yoga Toes Patents"). The '939 Patent claims are directed to the toe stretcher device, while the '915 Patent is directed to method claims of the toe stretcher device. The '939 Patent has 23 claims. FenF asserts Claim 1 is infringed by Taylor Gifts. The '919 Patent has 37 claims. FenF asserts Claim 33 is infringed by Taylor Gifts.

This matter is before the Court on the claim construction of the terms at issue. The parties have submitted their briefs and a hearing held on the matter. The Court also addresses Defendant's Motion for Summary Judgment of Invalidity based on indefiniteness since the analysis on the claim construction is dispositive on the motion.

## II.    CLAIM CONSTRUCTION

### A.    Standard of Review

Claim construction is an issue of law. *Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 388-90 (1996). The interpretation of patent claims is more a legal than a factual determination and is to be made by judges rather than juries. *Id.* It is the claims that measure the invention. *SRI Int'l Inc. v. Matsushita Elec. Corp.,* 775 F.2d 1107, 1121 n. 14 (Fed. Cir. 1985). The patentee is required to define precisely what his invention is and it would be unjust to the public to construe it in a manner different from the plain import of its terms. *White v. Dunbar,* 119 U.S. 47, 52 (1886). The courts begin their claim construction analysis with the words of the claim. *See Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582 (Fed. Cir. 1996); *Phillips v. AWH Corp.,* 415 F.3d 1303, 1314 (Fed. Cir. 2005)(*en banc)*. Absent an express intent to impart a novel meaning, "terms in a claim are to be given their ordinary and accustomed meaning" attributed to them by those of ordinary skill in the art *Renishaw PLC v. Marposs Societa' per Azioni,* 158 F.3d 1243, 1249 (Fed. Cir. 1998); *Teleflex, Inc. v. Ficosa N. Am. Corp.,* 299 F.3d 1313, 1325 (Fed. Cir. 2002).

In interpreting claims, a court "should look first to the intrinsic evidence of record, *i.e.,* the patent itself, including the claims, the specification and, if in evidence, the prosecution history." *Vitronics,* 90 F.3d at 1582. While words in a claim are generally given their ordinary and customary meaning, a patentee may choose to be his own lexicographer and use terms in a manner other than their ordinary meaning, as long as the special definition of the term is stated in the patent specification or file history. *Id.* at 1576. If the intrinsic evidence alone will resolve any ambiguity on a disputed claim term, then it is improper to rely on extrinsic evidence. *Id.* at 1582.

Courts, however, should not import limitations from the specification into the claim language, which can be difficult to apply in practice. *See Comark Communications, Inc. v. Harris Corp.,* 156 F.3d 1182, 1186-87 (Fed. Cir. 1998). To avoid importing limitations from the specification into the claims, it is important to keep in mind that the purposes of the specification are to teach and enable those of skill in the art to make and use the invention and to provide a best mode for doing so. *See Spectra-Physics, Inc. v. Coherent, Inc.,* 827 F.2d 1524, 1533 (Fed. Cir. 1987). To so teach, the specification usually provides an example of how to practice the invention in a particular case and the manner in which the patentee uses the term within the specification and claims usually will make the distinction apparent. *See Snow v. Lake Shore & M.S. Ry. Co.,* 121 U.S. 617, 630 (1887). If a patent describes only a single embodiment in the specification, the claims of the patent should not be construed as being limited to that embodiment because those persons of ordinary skill in the art rarely confine their definitions of terms to the exact representations depicted in the embodiments, unless the patentee clearly intended to limit the claim scope using words of manifest exclusion or restriction. *See Teleflex,* 299 F.3d at 1327.

Extrinsic evidence consisting of "all evidence external to the patent and prosecution history,

including expert and inventor testimony, dictionaries, and learned treatises" may be relied on by the courts. *Id.* at 1583. Dictionaries and treatises may provide the court a better understanding of the underlying technology and the way in which one of skill in the art might use the claim terms. *Id.* at 1584 n. 6. However, if the definition contradicts any definition found in or ascertained by the intrinsic patent documents, courts should not rely on the dictionary definition. *Id.* The use of a dictionary may extend patent protection beyond what should properly be afforded by the inventor's patent. *See Smith v. Snow,* 294 U.S. 1, 14 (1935). General dictionary definitions, while reflective of the ordinary meanings of words, do not always associate those meanings with context or reflect the customary usage of words by those skilled in a particular art. *Ferguson Beauregard/Logic Controls, Div. of Dover Resources, Inc. v. Mega Systems, LLC,* 350 F.3d 1327, 1338 (2003).

Extrinsic evidence may be useful to the court, but it is unlikely to result in a reliable interpretation of patent claim scope because it poses the risk that it will be used to change the meaning of the claims contrary to the intrinsic public records consisting of the claim language, the specification and the prosecution history. This undermines the public notice function of patents. *Southwall Techs, Inc. v. Cardinal IG Co.,* 54 F.3d 1570, 1576 (Fed. Cir. 1995). An accused device has no place in the claim construction protocol. *Scripps Clinic & Research Foundation v. Genentech, Inc.*, 927 F.2d 1565, 1580 (Fed. Cir. 1991). Finally, courts do not redraft claims. *Quantum Corp. v. Rodime, PLC*, 65 F.3d 1577, 1584 (Fed. Cir. 1996).

A *Markman* hearing was held in this matter. The parties have submitted briefs and outlines of the disputed terms and their proposed construction of the disputed terms.

### B. Claims at Issue

The parties have agreed to a construction of certain terms. The Court adopts the parties'

agreed claim construction of the claim term "the surrounding walls in at least one hole in the plurality of holes is continuous and thereby sealed; and" as "the surrounding walls in at least one hole are continuous, thereby sealing with no opening." (Doc. No. 61, App. 1, Pg ID 1249).

The only claim terms at issue, which Taylor Gift asserts are indefinite, are the terms "easy insertion" and "effectively separate and stretch the toes." Claim 1 of the '939 Patent states:

> A toe stretcher for stretching toes, comprising:
> a frame with a separator for separating a plurality of toes;
> wherein the frame comprises a top portion, a bottom portion, a front portion, and a back portion and further includes:
> a plurality of holes through the frame for insertion of a plurality of toes, wherein each hole in the plurality of holes includes an entrance into the back portion, an exit from the front portion, and surrounding walls connecting the entrance and the exit, wherein:
> the surrounding walls in at least one hole in the plurality of holes is continues and thereby sealed; and
> the surrounding walls in at least one other hole in the plurality of holes is non-continuous and thereby not sealed, serving as an openable toe hole allowing for ***easy insertion*** of a toe, whereby a user may place the toe stretcher on the plurality of toes and ***effectively separate and stretch the toes***.

'939 Patent, Claim 1.

Claim 33 of the '915 Patent states,

> A method of forming a toe stretcher, comprising acts of:
> forming a frame with a separator for separating a plurality of toes, wherein the frame comprises, a top portion, a bottom portion, a front portion, and a back portion, and further includes:
> a plurality of holes through the frame for insertion of a plurality of toes, wherein each hole in the plurality of holes includes an entrance into the back portion, an exit from the front portion, and surrounding walls connecting the entrance and the exit, wherein:
> the surrounding walls in at least one hole in the plurality of holes is continuous and thereby sealed; and
> the surrounding walls in at least one other hole in the plurality of holes is non-continuous and thereby not sealed, serving as an

> openable toe hole allowing for *easy insertion* of a toe, whereby a user may place the toe stretcher on the plurality of toes and *effectively separate and stretch the toes*.

'915 Patent, Claim 33.

Taylor Gifts argues that the elements of the respective claims are not capable of construction because the terms "easy insertion" and "effectively separate and stretch the toes" are indefinite and not amenable to construction. FenF responds that the terms are not indefinite. The patent examiner found the terms definite and a district court in a prior litigation involving the same claims found the claims were unambiguous and did not require any further construction. *See FenF, LLC v. Healio Health, Inc.,* Case No. 5:08-CV-404 (N.D. Ohio Apr. 1, 2009 Memorandum Opinion and Order) However, as noted by the parties, the issue of indefiniteness was not before the district court in the prior litigation.

Whether a claim complies with the definiteness requirement of 35 U.S.C. § 112, ¶ 2 is a matter of claim construction. *S3 Inc. v. nVIDIA Corp.,* 259 F.3d 1364, 1367 (Fed. Cir. 2001). Definiteness of claims is a question of law for the court to decide. *Shatterproof Glass Corp. v. Libbey-Owens Ford Co.,* 758 F.2d 613, 624 (Fed. Cir. 1985). A patent is presumed to be valid, so there must be clear and convincing evidence of indefiniteness in order for the court to find claims invalid. *Hearing Components, Inc. v. Shure, Inc.,* 600 F.3d 1357, 1366 (Fed. Cir. 2010). The test for definiteness asks whether one skilled in the art would understand the bounds of the claim when read in light of the specification. *AllVoice Computing PLC v. Nuance Communications, Inc.,* 504 F.3d 1236, 1240 (Fed. Cir. 2007).

Viewing the terms at issue as one skilled in the art, the Court finds that the terms are not indefinite. When read in light of the specification, the terms are not indefinite. The Background of

the Invention of the '939 Patent discloses that stretching tools designed to effectively stretch the toes are known in prior art. ('939 Patent, col. 1, lines 14-17) One skilled in the art understands the term "effectively stretch the toes" in light of the prior art. The Background also discloses that although toe stretchers devised to date have substantially filled the need to increase foot strength and increase toe and ankle flexibility, existing toe stretchers are "difficult" to use. ('939 Patent, col. 1, lines 20-22) Inserting the toes has been problematic, making it "difficult" to put the toe stretcher on and take it off. ('939 Patent, col. 1, lines 25-27) There exists a continuing need for a new and improved toe stretcher that is "easier" to put on and take off and this present invention substantially fulfills this need. ('939 Patent, col. 1 lines 28-31)

The Summary of the Invention notes that a user may place the toe stretcher on the plurality of toes and "effectively separate and stretch the toes." ('939 Patent, col 1, lines 38-41) It further notes that an openable toe hole allows for "easy insertion" of a toe. ('939 Patent, col. 1, lines 52-53) The method is disclosed where a user may place the toe stretcher on the plurality of toes and "effectively separate and stretch the toes." ('939 Patent, col. 2, lines 50-54) Describing another aspect, an openable toe hole allows for "easy insertion" of a corresponding toe or toes. ('939 Patent, col. 2, lines 65-67)

The Detailed Description discloses that an openable toe hole allows for "easy insertion" of a corresponding toe or toes. ('939 Patent, col 5, lines 33-35) It notes that the significance of the openable toe hole is that without the openable toe hole, the toe stretcher is not easily manipulated, thereby making it difficult to utilize existing toe stretchers. ('939 Patent, col 5, lines 49-52)

The '915 Patent Background of Invention discloses prior art which "effectively" stretched the toes. ('915 Patent, col. 1, lines 21-24) The Background describes prior art where each circle is

sealed which made inserting all five toes problematic, making it "difficult" to put the toe stretcher on and take it off. ('915 Patent, col. 1, lines 32-34) The present invention makes it "easier" to put on and take off the toe stretcher. ('915 Patent, col. 1, lines 35-38)

The '915 Patent Summary of Invention states that the toe stretcher comprises a frame with a separator for separating a plurality of toes, whereby a user may place the toe stretcher on the plurality toes and "effectively separate and stretch the toes." ('915 Patent, col. 1, lines 44-47) The openable toe hole allows for "easy insertion" of a toe. ('915 Patent, col. 1, lines 58-59) The method comprises an act of connecting a frame with a footwear whereby a user may place the toe stretcher on the plurality of toes and "effectively separate and stretch the toes." ('915 Patent, col. 2, lines 55-59) The openable toe hole allows for "easy insertion" of corresponding toe or toes. ('915 Patent, col. 3, lines 5-6)

The '915 Patent Detailed Description states that the present Invention relates to an exercise tool specifically devised as a toe stretcher to align, separate, and stretch toes. ('915 Patent, col. 5, lines 3-5) The openable toe hole allows for "easy insertion" of a corresponding toe or toes. ('915 Patent, col. 5, lines 43-44) The significance of the openable toe hole is that without the openable toe hole, the toe stretcher is not easily manipulated, thereby making it "difficult" to utilize existing toe stretchers. ('915 Patent, col. 5, lines 58-61)

Based on a reading of the claims in the '939 and '915 Patents and respective specifications, one skilled in the art would understand that the invention, a toe stretcher, discloses an openable toe hole that allows "easy insertion" of the corresponding toes in light of prior inventions which made it "difficult" to utilize the existing toe stretchers. One skilled in the art would also understand the term "effectively separate and stretch the toes" because prior art disclosed previous inventions

stretching the toes and that using the toe stretcher set forth in the '939 and '915 Patents would "effectively separate and stretch the toes." These two terms are not indefinite and are capable of construction. The Court adopts FenF's proposed construction that "the surrounding walls in at least one other hole in the plurality of holes is able to be opened thus allowing for easy insertion of a toe so that a user may place the toe stretcher on the plurality of toes with the intentional effect to separate and stretch the toes."

Given the Court's finding that the terms are not indefinite, Defendant Taylor Gifts' Motion for Summary Judgment that the patent is invalid based on indefiniteness is denied.

### III.   CONCLUSION

Based on the briefs and oral arguments in this matter, the Court finds that the disputed terms are not indefinite and construes the terms as more fully set forth above.

IT IS ORDERED that Defendant Taylor Gifts' Motion for Summary Judgment of Patent Invalidity Due to Indefiniteness **(Doc. No. 72)** is DENIED.


S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated: April 11, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 11, 2013, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager